```
         IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND
                                *
TANZY BLAND,
            Plaintiff           *

    v.                          *   CIVIL NO. WDQ-02-2223
                                    (Magistrate Judge Gauvey)
DIRECT INVESTIGATIVE            *
SERVICES INC. d/b/a
UNIVERSAL DIRECT SECURITY       *

            Defendants.         *

*   *   *   *   *   *   *   *   *   *   *   *   *
```

# FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff, Tanzy Bland, filed this action under Title VII of the Civil Rights Act of 1964 and under the Civil Rights Act of 1991, 42 U.S.C. § 1981(a), as amended, for injunctive relief; compensation for lost wages and benefits, and other injuries, losses, compensatory, pecuniary, and punitive damages caused by defendant's intentional acts of pregnancy discrimination; and costs and attorneys' fees.  After failing to respond to plaintiff's complaint, pursuant to Rule 55 of the Federal Rules of Civil Procedure, Judge William Quarles entered a default judgment against the defendant, Direct Investigative Services Inc. ("DIS"), and in favor of plaintiff on September 4, 2003.  Following the entry of default, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302,

this case was referred to the undersigned to hold all supplemental proceedings.

On February 24, 2004, pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, an evidentiary hearing on the damages recoverable in this Title VII action, including award of attorneys' fees and costs was held. At the hearing, the plaintiff and her mother, Rosetta Shivers, were the only two testifying witnesses. The defendant did not attend the hearing.

After carefully considering the sufficiency and weight of the testimony introduced at the hearing, the demeanor of the witnesses who testified, the exhibits submitted into evidence, and the plaintiff's written submissions, the Court makes the following Findings of Fact and Conclusions of Law as required by Rule 52(a) of the Federal Rules of Civil Procedure.

## **Back Pay**

The plaintiff seeks back pay in the amount of $2,400. The plaintiff submitted evidence verifying that her hourly wage with DIS was $7.50. The plaintiff also submitted her work schedule which showed that she was scheduled to work full-time, Monday thru Friday, from 2 p.m. until 10 p.m. The plaintiff worked a full eight-hour day on July 9, 2001, her first scheduled day of work, and was subsequently terminated

on July 10, 2001.  The plaintiff remained unemployed until August 31, 2001, when she was hired by Abacus as a security guard.  Accordingly, the plaintiff was unemployed and received no pay for 8 weeks, equaling a loss in pay in the amount of: 8 weeks x 40 hours/week = 320 hours of missed pay; 320 hours x $7.50 = $2,400.  Thus, the Court finds the plaintiff is entitled to $2,400 in back pay.

### Compensatory Damages

The plaintiff seeks $15,000 in compensatory damages for emotional distress, embarrassment, humiliation, and stress suffered as a result of her pregnancy discrimination.  The Court finds both the testimony of the plaintiff, and her mother, Ms. Shivers, to be credible.  The plaintiff testified that the pregnancy discrimination caused her to be humiliated, very upset, and afraid to look for other employment.  Additionally, the plaintiff testified that she was afraid to go outside, and was unable to sleep or eat.  Ms. Shivers, whom the plaintiff was living with at the time, also testified that the plaintiff was very upset, crying, and unable to eat or sleep because of her termination.  According to Ms. Shivers, the plaintiff remained in this condition for approximately two days following her termination.

Shortly after the plaintiff's termination, the plaintiff

testified that she had to move out of her mother's house and move in with her sister. While living at her sister's house, and being seven months pregnant, the plaintiff had no bed and had to sleep on the floor. The plaintiff also testified that she was further humiliated because without the paycheck from DIS, she had no choice but to seek help from Social Services for medicaid, food stamps, and cash assistance to buy supplies for her infant.

The plaintiff was undoubtedly upset and humiliated by her termination. The pregnancy discrimination affected the plaintiff both physically and emotionally causing her difficulty with sleeping and eating, and evoking humiliation and fear. Nonetheless, the plaintiff's mother testified that the plaintiff only appeared to be extremely upset for the two days following her termination, and the plaintiff obviously overcame her fear of searching for alternative employment, as she was hired by Abacus at the end of August 2001. Thus, the Court finds that the plaintiff is entitled to an award of $2,500 in compensatory damages for emotional distress, embarrassment, humiliation and stress suffered as a result of the pregnancy discrimination.

### Punitive Damages

The plaintiff also seeks $45,000 in punitive damages.

While 42 U.S.C. § 1981a authorizes punitive damage awards, punitive damages are "an extraordinary remedy," to be reserved for egregious cases.  <u>Stephens v. South Atlantic Canners, Inc.</u>, 848 F.2d 484, 489 (4th Cir. 1988).  Punitive damages in a Title VII action are only available when "the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices <u>with malice or with reckless indifference to the federally protected rights of an aggrieved individual</u>." 42 U.S.C. § 1981a(b)(1)(emphasis added); <u>Harris v. L & L Wings, Inc.</u>, 132 F.3d 978, 982-83 (4th Cir. 1997).  The Supreme Court has held that the terms "malice" or "reckless indifference" "ultimately focus on the actor's state of mind,"  thus, punitive damages are appropriate when a person discriminates "in the face of a perceived risk that [his] actions will violate federal law." <u>Kolstad v. Am. Dental Ass'n</u>, 527 U.S. 526, 535-36 (1999). Additionally, the plaintiff is required to  establish that liability for punitive damages should be imputed to the employer.  <u>Id</u>. at 539.  The Fourth Circuit has explained the punitive damages standard set forth in <u>Kolstad</u> as follows:

> When an employee has discriminated in the face of a known
> risk that his conduct will violate federal law,
> an employer may be held vicariously liable for a punitive
> damage award in a Title VII case for the intentionally
> discriminatory conduct of its employee, where the

> employee served the employer in a managerial capacity[ and] committed the intentional discrimination at issue while acting in the scope of employment, and the employer did not engage in good-faith efforts to comply with Title VII.

Lowery v. Circuit City Stores, Inc., 206 F.3d 431, 442 (4th Cir. 2000).

Accordingly, under the vigorous requirements of 42 U.S.C. § 1981a and Kolstead, the plaintiff has failed to prove sufficient facts for a finding of an award of punitive damages.  At the hearing, plaintiff's counsel argued that an award for punitive damages should be made because DIS intentionally and admittedly discriminated against the plaintiff because she was pregnant; thus, their behavior demonstrated the necessary malice threshold.  The record is not sufficiently developed to support such an award.  The plaintiff produced no evidence that Ms. Stewart, the office manager who terminated the plaintiff, acted with the knowledge that she was acting "in the face of a perceived risk that [her] actions w[ould] violate federal law."  See Kolstad, 527 U.S. at 535-36.  As the Fourth Circuit explained in Lowery:

> In some circumstances, the employer may simply be unaware of the relevant federal prohibition.  There will be cases, moreover, in which the employer discriminates with the distinct belief that its discrimination may be lawful . . . an employer may reasonably believe that its discrimination satisfies

> a bonafide occupational qualification defense or
> other statutory exception to liability.

Lowery, 206 F.3d at 442.  Thus, because the plaintiff has failed to provide evidence of the requisite "malice" standard, this Court finds that the plaintiff is not entitled to an award of punitive damages.

### Attorneys' Fees and Costs

The plaintiff seeks attorneys' fees in the amount of $13,255.00 and costs in the amount of $245.90.

Under 42 U.S.C.A. § 2000e-5(k), a court may award reasonable attorneys' fees and costs to a prevailing plaintiff in an employment discrimination action.  Brodziak v. Runyon, 145 F.3d 194, 196 (4th Cir. 1998).  Because a default judgment was entered on behalf of the plaintiff, she is a "prevailing plaintiff;" thus, she is entitled to recover an attorney's fee "unless special circumstances would render such an award unjust." Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1359 (4th Cir. 1995). The proper method for determining a reasonable attorney's fee, is to multiply the number of hours reasonably expended on the litigation by a reasonable hourly rate.  Trimper v. City of Norfolk, VA, 58 F.3d 68, 73-4 (4th Cir. 1995).  In determining both a reasonable hourly rate and the reasonable number of hours expended, the Court must apply the factors articulated by the Fifth Circuit in Johnson v.

Georgia Highway Express, inc., 488 F.2d 714 (5th Cir. 1974), abrogated on different grounds by Blanchard v. Bergeron, 489 U.S. 87 (1989), which have been adopted by the Fourth Circuit. Trimper, 58 F.3d at 73.[1] Consideration of those factors in arriving at the reasonable rate and the reasonable number of hours expended ordinarily will produce a lodestar figure that results in fair compensation without further adjustment; the burden is on the applicant to establish the reasonableness of the time expended and the hourly rates requested. Trimper, 58 F.3d at 73-74; Daly, 790 F.2d at 1078 (citing Blum v. Stenson, 465 U.S. 886 (1986).

### Hourly Rates

In determining the reasonableness of the attorney's hourly rate, the Court looks at the amount sought as the attorney's hourly rate to determine whether the rate is fair in light of specific evidence of the prevailing market rates in the relevant community for attorneys' fees for the type of litigation involved. Trimper, 58 F.3d at 76. In the instant case, plaintiff's attorney, Joseph

---

[1] These factors are: "(1) the time and labor required to litigate the suit; (2) the novelty and difficulty of the questions presented by the lawsuit; (3) the skill required properly to perform the legal service; (4) the preclusion of other employment opportunities for the attorney due to the attorney's acceptance of the case; (5) the customary fee for such services; (6) whether the fee is fixed or contingent (see below); (7) time limitations imposed by the client or the circumstances; (8) the amount in controversy involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the 'undesirability' of the case; (11) the nature and length of the attorney's professional relationship with the client; and (12) awards in similar cases." Trimper, 58 F.3d at 73.

Mallon, failed to provide the Court sufficient information on the fair market rate for attorneys similarly situated handling employment matters; thus, in making this award, the Court relied upon the Local Rules Guidelines regarding the hourly rates for attorneys who have been admitted to the bar for more than eight years.  Local Rules Appendix B, Rule 3(c).  In accordance with these Guidelines, the Court reduces the plaintiff's requested hourly rate of $275, finding $200 per hour to be a reasonable hourly rate, which is the low end of the guideline range for attorneys admitted to the bar eight years or longer.  Mr. Mallon and Mr. McCool have been practicing law for longer than eight years and with experience in employment law.

<u>Hours Reasonably Expended</u>

As with determining the reasonable rate, the Court is to look to the <u>Johnson</u> factors to assess the reasonable number of hours expended.  <u>Daly v. Hill</u>, 790 F.2d 1071, 1078 (4th Cir. 1986).  Such factors would include the novelty and complexity of the issues and the experience and skill of the counsel (excessive hours by inexperienced counsel should be reduced).  <u>Spell v. McDaniel</u>, 852 F.2d 762, 765 (4th Cir. 1988).  Hours not reasonably expended are to be excluded from the initial fee calculation.  <u>Daly</u>, 790 F.2d at 1079.

As a general guidepost for awarding attorneys' fees, the Court recognizes that counsel of the prevailing party has <u>a duty</u> to exercise "billing judgment" and to "exclude from a fee request hours that are excessive, redundant or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. <u>Trimper</u>, 58 F.3d at 76 (emphasis added); <u>Daly</u>, 790 F.2d at 1079 (<u>quoting</u> <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 434 (1983)).

In reviewing the time sheet (and in the absence of defense identification of any objectionable entries), the Court finds the amount of time spent, 48.2 hours, reasonable under <u>Johnson</u>.

### <u>Expenses</u>

Generally, "reasonable attorneys' fees under 42 U.S.C. § 1988 must include reasonable expenses because attorneys' fees and expenses are inseparably intertwined as equally vital components of the costs of litigation.  <u>Daly</u>, 790 F.2d at 1083 (<u>quoting</u> <u>Dowdell v. City of Apopka</u>, 698 F.2d 1181 (11th Cir. 1983).  Costs taxable under § 1988 are not limited to those taxable under Rule 54(d).  <u>Id.</u> at 1084.

The plaintiff has provided an affidavit and copies of receipts documenting her request for costs in the amount of $245.90.  The following costs are allowed:

    1.) $6.50 delivery fees;

    2.) $13.15 EEOC fees for records search and photocopies;

    3.) $150.00 filing fee;

    4.) $76.25 service fees.

Accordingly, fees in the amount of $9,640.00, and expenses in the amount of $245.90, a total of $9885.90, will be awarded by separate Order.

Date: 5/7/04                      /s/
                                    Susan K. Gauvey
                                    United States Magistrate Judge